# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

VIANEY SOUQUETTE and
ROSS LONSDOF,

Plaintiffs,

    -against-

AIRBNB, INC.,

Defendant.

Civil Action No.: 23-6250

**COMPLAINT**

**JURY TRIAL DEMANDED**

---

Plaintiffs Vianey Souquette ("Ms. Souquette") and Ross Lonsdof ("Mr. Lonsdof") (Collectively, "Plaintiffs"), by and through their undersigned counsel, bring this action against Airbnb, Inc. ("Airbnb," the "Company," or "Defendant"). Plaintiffs' allegations are based on knowledge of their own acts and experience and on information and belief as to all other matters. Plaintiffs' information and belief is based upon, among other things, a comprehensive investigation undertaken by their attorneys, an analysis of public records and other documents, and a comprehensive legal analysis of the relevant law. Plaintiffs believe that after a reasonable opportunity for discovery, substantial additional evidentiary support will exist for the allegations set forth herein:

## NATURE OF ACTION

1. This is an action seeking damages for violations of § 349 of New York General Business Law (GBL), Fraud, Sexual Assault/Battery, Aiding and Abetting, loss of consortium, and Unjust Enrichment against Airbnb for its conduct and actions as an unlicensed "real estate broker."

2. Through its website, <u>www.airbnb.com,</u> Airbnb created and maintains an operation that lists, advertises, and takes fees and/or commissions for property rentals it facilitates, controls, and processes payments for. Those individuals who sign up for Airbnb's services (*i.e.*, its "members") can either list and rent out their property (as "Hosts") or find properties to rent (as "Guests"). For every rental transaction, Airbnb takes and processes the rental payments

and takes a percentage of the payment as a fee and/or commission from both the Host and the Guest. What may seem a novel and convenient enterprise is, at the bottom, entirely illegal.

3. NYRPL § 440-a unambiguously provides, in relevant part, that "[n]o person, co- partnership, limited liability company or corporation shall engage in or follow the business or occupation of or hold himself or itself out or act temporarily or otherwise as a real estate broker… in this state without first procuring a license therefor." Airbnb does not presently and has never had such a license.

4. As defined in NYRPL §440, Airbnb falls within the ambit of "real estate broker" as the term includes "any person, firm, limited liability company or corporation, who, for another and for a fee, commission or other valuable consideration … rents, or offers or attempts to negotiate a … rental of an estate or interest in real estate, or collects or offers or attempts to collect rent for the use of real estate." As described herein, this is precisely the activity Airbnb engages in.

5. Penalties for violating NYRPL § 440-a include refund of all commissions paid and a penalty that is equal to 400% of those commissions.

6. Airbnb's authority is vested in 86+ pages of convoluted, single-spaced adhesion contracts and rental agreements that purport to disclaim all liability and responsibility for its unlawful conduct while categorically attempting to usurp the lawful rights and remedies of its members at every level.

7. While a real estate broker is required by law to either avoid actual conflicts in the transactions it controls or obtain written consent to waive such conflicts, Airbnb does neither. The company goes so far as to place itself in the position of sole arbiter and decision-maker in all member disputes and vests itself with complete discretion concerning the fees and commissions it takes as well as the distribution of rental payments it processes.

8. For these reasons and those described herein, Airbnb is operating in clear violation of New York law and engaging in deceptive and fraudulent conduct that has resulted and will continue to result in actual harm to its members, including the Plaintiffs.

9. Plaintiffs, therefore, seek relief in the form of statutory, actual, and punitive damages, declaratory and injunctive relief, an award of attorney's fees and expenses, and all additional relief the Court deems just and proper.

## JURISDICTION AND VENUE

10. This Court has diversity subject-matter jurisdiction over this case. This Court has personal jurisdiction over the parties because the Plaintiffs entered into a contract[1] with Defendant Airbnb to rent one of Defendant Airbnb's properties located in Tulum, Mexico while located in New York. Additionally, Airbnb transacts substantial business within the State of New York, including the Southern District in New York City.

11. The plaintiffs' action satisfies the diversity jurisdictional requirements in that:

    a. Airbnb is a Delaware corporation with its principal place of business in California. Airbnb is also registered to do business in New York State;

        i. New York State Business Address: 80 State Street, Albany, NY, United States, 12207.

    b. Plaintiff's Vianey Souquette and Ross Lonsdof are citizens of Texas, which is different citizenship from Airbnb (*i.e.*, California and Delaware), and

    c. as alleged herein, Plaintiffs claims vastly exceed seventy-five thousand dollars ($75,000) in the aggregate.

12. Venue in this judicial district is proper according to 28 USC § 1391(a) because Airbnb conducts substantial business in, and may be found in, this district, and the Plaintiffs paid the illegal rental commissions for properties to Airbnb while they resided within the State of New York.

13. According to 28 U.S.C. §1391(b)(2), the venue is appropriate in the Southern District of New York. A substantial part of the events or omissions giving rise to the Plaintiffs' claims occurred in this District.

---

[1] A non-domiciliary defendant transacts business in New York when on his or her own initiative, the non-domiciliary projects himself or herself into this state to engage in a sustained and substantial transaction of business. Touro College v. Fondazione Touro Univ. Rome Onlus, 738 Fed. Appx. 25, 26. When a corporation regularly solicits business in a jurisdiction, either directly or through an agent, it is transacting business in that jurisdiction. Untermeyer v. Fidelity Daily Income Trust, 1976 U.S. Dist. LEXIS 15435, *1.

**THE PARTIES**



**PLAINTIFF VIANEY SOUQUETTE**

14. Plaintiff Vianey Souquette is a long-term customer of Airbnb, and, during the relevant time period, served as a renter, tenant, or customer of Airbnb's rental in unit in Tulum, Mexico. With regard to her renter, tenant, or consumer transactions, Ms. Souquette paid real estate commissions/fees and/or rent to Airbnb while located in the State of New York.



**PLAINTIFF ROSS LONSDOF**

15. Plaintiff Ross Lonsdof is a long-term customer, tenant, or resident of Airbnb, and, during the relevant time period, has served as a Guest (*i.e.*, locating and renting property from a Host through Airbnb). With regard to these Guest transactions, Mr. Lonsdof paid real estate commissions/fees and/or rent to Airbnb while located in the State of New York.

**DEFENDANT AIRBNB**

16. Defendant Airbnb Inc. is a domestic corporation that was formed in Delaware and listed its principal place of business as San Francisco, California. Airbnb does substantial business within the State and City of New York and is a registered business in New York. In fact, in New York City alone, Airbnb reportedly made nearly $300 million in revenue in 2014.

**FACTUAL BACKGROUND**

17. According to its website (www.airbnb.com), Airbnb was founded in 2008 and operated as a "marketplace for people to list, discover, and book unique accommodations around the world

— online or from a mobile phone or tablet." Since that time, Airbnb has facilitated accommodations for more than "60,000,000" Guests, in more than "34,000" cities, in more than "190" countries.

18. Airbnb currently facilitates an average of 25,000 rental transactions per day in New York City alone, making it Airbnb's largest real estate rental market in the entire United States.

19. Members can thereafter list their property (or properties) to rent (in the role of a "Host") or can find and request a rental booking at a Hosts' property (in the role of a "Guest").

20. A Host does not need a real estate broker's license to rent out his or her own property.

21. Since its inception, Airbnb has not charged Hosts any fee to advertise on its website. Instead, Airbnb charges Hosts a 3% commission on the revenue generated from rentals completed through its website.

22. Airbnb deducts and retains the 3% commission from rental payments it receives and processes from Guests prior to distributing the balance to the Host.

23. In addition to charging the Hosts, Airbnb also charges its Guests a commission.

24. Airbnb does not disclose the percentage or amount of these Guest commissions to the Hosts or anyone other than the Guests. However, Airbnb's website claims the Guests' commissions vary with each transaction and fall somewhere within a range of 6% to 12% of the rental contract.

25. As reflected within the terms of its various agreements, practices, and its website, Airbnb provides members with the following real estate services:

    a. Airbnb lists and advertises properties available to rent on its website and seeks to be the primary mechanism and intermediary agent to connect members who are ready, willing, and able to enter into real estate transactions, thereby earning two commissions in the process (*i.e.*, from both Guests and Hosts);

    b. Airbnb provides, regulates, and controls an online forum upon which all Hosts and Guests must conduct their communications and negotiations prior to completing and funding their rental agreements;

    c. Airbnb requires all members who wish to complete rental transactions to assent to using Airbnb's mandatory 86-pages of adhesion contracts – effectively requiring Airbnb to act as the lawyer for all members;

    d. Airbnb requires the Guest to assent to Airbnb's handling of all rental monies, requiring them to pay all of the rent and commission owed in each transaction to

Airbnb, to act as an escrow agent in each and every Airbnb rental transaction, and giving Airbnb absolute discretion in deciding how such money is disbursed;

e. Airbnb requires all members to assent to Airbnb's absolute discretion to resolve disputes between its members concerning Airbnb's transactions and for Airbnb to make "final and binding" decisions (as an escrow agent and/or arbiter) concerning whether and how to enforce its own agreements -- including any decision on whether to cancel or enforce any agreement (*e.g.,* whether to provide a refund to the Guest or find the Guest another accommodation);

f. Airbnb offers Hosts an option to allow Airbnb to set the prices of their rentals, using Airbnb's proprietary software and business data of all Airbnb rentals in that location, which supposedly allows Hosts to maximize their rental income;

g. Airbnb makes available a free-of-charge professional photographer to take pictures of Host properties to be published on its website; and

h. Airbnb purchases outside advertising to promote its website to increase traffic and thus rentals (and commissions related thereto) of Host properties.

26. Airbnb's substantial efforts in facilitating and completing the rental transactions involving New York properties, including the acceptance of rent and obtaining fees and commissions, satisfy both of the two alternate legal definitions of being a "real estate broker" under NYRPL § 440-1.

27. Despite such real estate broker services and status, Airbnb has never had a New York real estate broker's license.

28. Airbnb neither executes nor asks its members to execute the New York State Disclosure Form (DOS 1735-a), which is required under New York law.

29. Consequently, Airbnb's lack of a real estate broker's license (and lack of such requisite disclosure form compliance) renders all of its real estate commissions illegal.

30. Although Airbnb's Terms of Service provide that Airbnb is not a "real estate broker," such self-serving disclaimers are meaningless and contradicted by New York law.

**PLAINTIFFS ARE PHYSICALLY ATTACKED AND**
**WERE VICTIMS OF UNWANTED SEXUAL CONTACT AT AIRBNB IN MEXICO**



31. On or about July 20, 2021, Ms. Souquette and Mr. Lonsdof were in Guillermo Alejandro's rental.



32. At that time, several intruders entered the rental through a broken fence and defective patio door and proceeded to attack Ms. Souquette physically.







33. The intruders were all male, they carried machetes, bats, and pipes.

34. The men grabbed Ms. Souquette at her private parts and attempted to rip her clothes off.

35. Mr. Lonsdof was in the shower at the time and came out to the screams of Ms. Souquette.

36. Mr. Lonsdof attempted to fight off the attacker, and he was subsequently attacked himself. Having his genitals grouped as he wrestled with the attackers.



37. The plaintiffs immediately reported this attack to the local police. We have this on video.

38. Ms. Souquette and Mr. Lonsdof have both suffered physical, mental, and emotional injuries.

39. This breach in security was a direct result of the poor condition Guillermo Alejandro maintained his property and AirBnB's failure to guarantee the safety of its guests.

40. This stark reality flies in the face of AirBnB's declaration that Guillermo Alejandro is a "Superhost," creating a false sense of security in the minds of Ms. Souquette and Mr. Lonsdof, as well as other unsuspecting Airbnb customers.

41. Ms. Souquette and Mr. Lonsdof endured physical injury, which has led to a diagnosis of PTSD, severe depression, anxiety, sleep deprivation, and loss of consortium.



42. Ms. Souquette's fingers were fractured, her tooth was broken, and she now needs cosmetic dentistry.



43. Mr. Lonsdof sustained lacerations and scarring about his chest, arms, and legs.

44. This experience was horrific for Ms. Souquette and Mr. Lonsdof and has placed a severe strain on their decade-long relationship.


**AIRBNB'S PROFIT OVER PEOPLE BUSINESS MODEL**

45. Airbnb's profit-over-people business model has created a space for creeps and criminals to exploit and victimize unsuspecting renters. Airbnb's leases offer to lease places for rent, solicits listings of places for rent, solicits prospective tenants, or collects rent from real property in exchange for financial remuneration. AirBnB's business depends on bringing two or more parties together to lease a particular piece of property.

46. The affirmative act by AirBnB of bringing landlords and tenants of real property together through its internet platform places upon AirBnB an obligation of ordinary care.

47. Moreover, Airbnb does not engage in formal inspections of all of their listings as a matter of course. In fact, in another act of shamefully placing profits over people, Airbnb only provides inspections if the unit owners pay for them.

48. In failing to engage in proper investigation and vetting of lessors before allowing them to post their property on its website and failing to inspect the property correctly, AirBnB creates a foreseeable risk of harm to renters such as Ms. Souquette and Mr. Lonsdof.

49. Unfortunately for Ms. Souquette and Mr. Lonsdof, they detrimentally relied upon AirBnB's empty promises and guarantees of their safety.

## YOU MAY DIE RENTING AN AIRBNB

50. On or about November 9, 2022, two Virginia families are searching for answers as they mourned the deaths of their loved ones, who were found dead in a vacation rental property in Mexico along with a third friend.

51. Kandace Florence and Jordan Marshall, both 28, grew up together in Virginia Beach as best friends and graduates of Kellam High School. The two were on vacation in Mexico City with another friend, Courtez Hall. Both he and Jordan Marshall were teachers in New Orleans.

52. But their families say all three were found dead inside their **Airbnb**. https://www.wlbt.com/2022/11/09/3-friends-found-dead-airbnb-while-vacationing-mexico/.

53. The families of the deceased have launched a wrongful death lawsuit against Airbnb. https://www.lorenzoandlorenzo.com/blog/wrongful-death/airbnb-carbon-monoxide-deaths-lawsuit/.

## YOU MAY GET RAPED RENTING AN AIRBNB

54. Upon information and belief, on or about June 2021, an Australian woman who was allegedly raped at knifepoint in an Airbnb apartment in New York received a secret settlement of $7m which included restrictions on what she could say about the incident, according to a media investigation into the vacation listings giant's "guest safety" policies.

55. The 29-year-old was attacked in a property near the tourist magnet and central Manhattan crossroads of Times Square early on New Year's Day in 2016, <u>Bloomberg Businessweek</u> reported, prompting the swift intervention of a dedicated Airbnb crisis management "taskforce." https://www.theguardian.com/technology/2021/jun/16/airbnb-new-york-woman-allegedly-raped-settlement.

## AIRBNB PROVIDES A SAFE HAVEN FOR CHILD PREDATORS

56. Upon information and belief, on or about April 2022, a 32-year-old California woman flew to Michigan for an alleged sexual tryst with a 15-year-old boy, who became spooked and told his parents after she sent Uber drivers to his home to pick him up and deliver him to her Airbnb, police claim.

57. The woman, Stephanie Sin, of San Francisco, is now in jail in Oakland County with a $100,000 cash bond, charged with child sexually abusive activity and using a computer to commit a crime. <u>https://people.com/crime/california-woman-allegedly-rented-airbnb-in-michigan-flew-to-sexually-abuse-15-year-old-boy/</u>.

## AIRBNB HAS A PATTERN AND PRACTICE OF COVERING UP SEXUAL ASSAULTS, MURDERS, AND OTHER CRIMES THAT OCCUR AT THEIR RENTAL PROPERTIES

58. According to a report conducted by The Middletown Press, Airbnb has an 'elite secret team' to hide crimes that occur in their accommodations. <u>https://www.middletownpress.com/business/article/Airbnb-has-an-elite-secret-team-to-hide-crimes-16272675.php#:~:text=Eight%20former%20members%20of%20the,the%20discovery%20of%20dismembered%20bodies%20</u>.

59. According to an investigation by Bloomberg, as Airbnb grew, so did the number of dangerous incidents—everything from hosts hurling suitcases out of windows to concealed cameras, gas leaks, and sexual assaults. Many of the crimes taking place inside short-term rentals listed on its platform, and others could have happened in any apartment or hotel room. But in some cases, hosts used the platforms to commit them.

60. In one October 2011 incident, an Airbnb host in Barcelona plied two American women who'd booked a stay at his home with alcohol, then raped them. When the women went to the police the next morning, the Host threatened to upload videos of the attack to the internet if they didn't drop the case, according to local media reports. Police searched his apartment and found hundreds of similar photos of other victims. The man received a 12-year prison sentence. Airbnb, which declined to comment about the case for this story, paid the two women an undisclosed amount and banned the Host for life.

61. By 2016 the safety team was overwhelmed with calls, many of them minor in nature, and Airbnb started training contractors in call centers around the world to handle the flood of complaints. Airbnb says that fewer than 0.1% of stays result in a reported safety issue, but with more than 200 million bookings a year, that's still a lot of trips with bad endings. Only the most serious problems are transferred to the internal safety team.

62. That team is made up of about 100 agents in Dublin, Montreal, Singapore, and other cities. Some have emergency services or military backgrounds. Team members have the autonomy to spend whatever it takes to make a victim feel supported, including paying for flights, accommodation, food, counseling, health costs, and sexually transmitted disease testing for rape survivors.

63. A former agent who was at Airbnb for five years describes the approach as shooting "the money cannon." The team has relocated guests to hotel rooms at ten times the cost of their booking, paid for round-the-world vacations, and even signed checks for dog-counseling sessions. "We go the extra mile to ensure anyone impacted on our platform is taken care of," Bunch says. "We don't really worry about the brand and image component. That stuff will take care of itself as long as you do the right thing."

64. Former agents recall cases where they had to counsel guests hiding in wardrobes or running from secluded cabins after being assaulted by hosts. Sometimes the guests were the perpetrators, as with an incident when one was found in bed, naked, with his Host's 7-year-old daughter. Agents have had to hire body-fluid crews to clean blood off carpets, arrange for contractors to cover bullet holes in walls, and deal with hosts who discover dismembered human remains.

65. The work can be so stressful that agents have access to cool-down rooms with dimmed lighting to create a soothing atmosphere for answering harrowing calls. And it can take a heavy toll. Some former agents say they suffer from vicarious trauma. On the job, they tried to remember that everything that happens in life can happen in an Airbnb. That perspective was drilled into new recruits during 12-week training sessions: Just as nightclubs can't eliminate sexual assaults and hotels can't stop human trafficking, Airbnb can't prevent bad actors from using its platform.

66. The company says its safety agents are taught to prioritize customers in crisis. Yet, many understood themselves to have a dual role in protecting both the individual and Airbnb's public image. In sensitive cases, according to some former agents, they were encouraged to get a payout agreement signed as quickly as possible. Until 2017, other insiders say, every agreement came with a nondisclosure clause that barred the recipient from talking about what had happened, making further requests for money, or suing the company. That practice ended when the #MeToo movement showed how nondisclosure agreements were being used to shield high-profile individuals and companies from fallout over allegations of misconduct. Airbnb replaced the NDA section of its payout agreement with a narrower clause that says recipients can't discuss the terms of their settlement or imply that it's an admission of wrongdoing.

67. The company declined to comment on the terms of settlements or the safety team's budget. But a confidential document seen by Bloomberg Businessweek shows that in recent years, Airbnb spent an average of about $50 million annually on payouts to hosts and guests, including on legal settlements and damage to homes. (The company says that most of its payouts are related to property damage under its host-guarantee insurance program and that even six-figure settlements are "exceptionally rare."). https://www.bloomberg.com/news/features/2021-06-15/airbnb-spends-millions-making-nightmares-at-live-anywhere-rentals-go-away.

## AIRBNB TO NO LONGER COMPEL
## ARBITRATION FOR SEXUAL ASSAULT CLAIMS
### (*as if they had a choice*)

68. Upon information and belief, on or about April 2021, AirBnB announced that they were no longer enforcing their arbitration clause for victims of sexual assault.

69. For AirBnB's victim Sherry Dooley, Airbnb Inc.'s recent announcement that it would no longer force guests into confidential arbitration to settle claims of sexual assault was disturbing.

70. Another victim, Natalie White, will also get her day in Court.

71. Upon information and belief, both women filed lawsuits against the company, claiming they were sexually assaulted inside properties rented through Airbnb.

72. Upon information and belief, Dooley, a 55-year-old worker at a food truck from Oregon, says she was raped by an intruder in an apartment in Colima, Mexico, in 2019.

73. Upon information and belief, White, a 23-year-old medical student from New Jersey, says she was attacked by a host who tried to tear off her clothes in Los Angeles last year. https://www.japantimes.co.jp/news/2021/08/19/world/crime-legal-world/airbnb-sexual-assault/.


## AS FOR THE FIRST CAUSE OF ACTION
### (*Statutory Action-NYRPL §440 et seq.-for being an unlicensed real estate broker*)

74. Plaintiffs incorporate by reference and re-allege each and every allegation set forth above as though fully set forth herein.

75. NYRPL § 440-a requires any person or corporation engaged in the leasing of New York real estate and/or who collects rent for the leasing of real estate to obtain a New York State real estate broker's license.

76. New York real estate broker's statute (NYRPL §440-1) creates several tests of whether a person or corporation is a "real estate broker."

77. Because Airbnb's New York real business transactions predominately involve the leasing of New York real estate as well as collecting of rent therefrom, Airbnb's actions establish both alternate statutory definitions of being a New York "real estate broker."

78. As a New York "real estate broker," Airbnb needs a New York real estate broker's license to collect any fee or commission for the rental of New York properties.

79. Airbnb lacks any New York real estate broker's license.

80. A real estate broker must further ensure all parties to any real estate agreement execute DOS Form 1735-a in its transactions.

81. Airbnb had no right to receive commissions for its real estate broker services within the State of New York.

82. Plaintiffs have private rights of action to prosecute their claims against Airbnb for completing its unlicensed real estate broker transactions with Plaintiffs.

83. Airbnb is subject to civil prosecution and penalties for acting as an unlicensed real estate broker in each of the Plaintiffs' distinct New York real estate rental transactions.

84. Plaintiffs suffered damages when they paid Airbnb's illegal real estate fees and/or commissions for New York real estate rentals.

85. Plaintiffs are entitled to a refund of such illegal commissions.

86. Because of Airbnb's extensive and deliberate conduct to violate NYRPL § 440-a and other New York civil and criminal laws in hundreds of thousands of real estate transactions, the Court should impose a penalty that is equal to 400% of the illegal commissions they paid.

87. Plaintiffs are also entitled to declaratory relief regarding Airbnb's unlawful conduct and an injunction preventing Airbnb from engaging in its illegal real estate transactions until its conduct is modified within the legitimate boundaries of law and ethics.

88. Plaintiff is damaged in an amount to be determined at trial.

**WHEREFORE,** Plaintiff demands that judgment be entered against Defendants and seeks the following relief:

    a. Emotional distress damages, including, but not limited to, pain, suffering, stress, humiliation, and mental anguish;

    b. Punitive damages;

    c. Attorney fees, pre-and post-judgment interest, and cost of suit;

    d. Such other relief as the Court may deem just and appropriate under the circumstances.

## AS FOR THE SECOND CAUSE OF ACTION
### *(Deceptive Trade Practices- GBL §349)*

89. Plaintiffs incorporate by reference and re-allege each and every allegation set forth above as though fully set forth herein.

90. Plaintiffs qualify as "consumers," as described in GBL § 349.

91. Defendant made numerous false, misleading, and deceptive statements and omissions of material facts with regard to its conduct, including, but not limited to, acting as an unlicensed real estate broker and the unlawful collection of fees and/or commissions.

92. Defendant's deceptive acts were such that a reasonably prudent consumer would likely be misled.

93. Plaintiffs suffered economic damages as a direct and/or producing result of Airbnb's past and ongoing violations of GBL § 349. Plaintiffs are therefore entitled to economic and treble damages for Airbnb's knowing and/or intentional violations, as well as injunctive relief, attorneys' fees, litigation expenses, and court costs.

94. Plaintiff is damaged in an amount to be determined at trial.

**WHEREFORE,** Plaintiff demands that judgment be entered against Defendants and seeks the following relief:
   a. Emotional distress damages, including, but not limited to, pain, suffering, stress, humiliation, and mental anguish;
   b. Punitive damages;
   c. Attorney fees, pre-and post-judgment interest, and cost of suit;
   d. Such other relief as the Court may deem just and appropriate under the circumstances.

## <u>AS FOR THE THIRD CAUSE OF ACTION</u>
### *(Fraud)*

95. Plaintiffs incorporate by reference and re-allege each and every allegation set forth above as though fully set forth herein.

96. Defendant falsely represented and/or omitted material facts with regard to its conduct, including, but not limited to, acting as an unlicensed real estate broker, and the unlawful collection of fees and/or commissions.

97. Plaintiffs justifiably relied upon Defendant's false representations and/or omissions.

98. As a proximate cause of Defendant's fraudulent conduct, the Plaintiffs were damaged by, *inter alia*, paying illegal real estate fees and/or commissions.

99. Plaintiff is damaged in an amount to be determined at trial.

**WHEREFORE,** Plaintiff demands that judgment be entered against Defendants and seeks the following relief:

a. Emotional distress damages, including, but not limited to, pain, suffering, stress, humiliation, and mental anguish;
b. Punitive damages;
c. Attorney fees, pre-and post-judgment interest, and cost of suit;
d. Such other relief as the Court may deem just and appropriate under the circumstances.

## AS FOR THE FOURTH CAUSE OF ACTION
### *(Unjust Enrichment)*

100. Plaintiffs incorporate by reference and re-allege each and every allegation set forth above as though fully set forth herein.

101. As a result of accepting illegal fees and/or commissions as an unlicensed real estate broker, Defendant has been unjustly enriched at Plaintiffs' expense.

102. It is against principles of equity and good conscience for Defendant to retain the benefit of those funds received from the Plaintiffs.

103. Accordingly, Plaintiffs are entitled to a judgment against Defendant in the amount of any profits as a direct and proximate result of the retention of such illegal fees and/or commissions.

104. Plaintiff is damaged in an amount to be determined at trial.

**WHEREFORE,** Plaintiff demands that judgment be entered against Defendants and seeks the following relief:
a. Emotional distress damages, including, but not limited to, pain, suffering, stress, humiliation, and mental anguish;
b. Punitive damages;
c. Attorney fees, pre-and post-judgment interest, and cost of suit;
d. Such other relief as the Court may deem just and appropriate under the circumstances.

## AS FOR THE FIFTH CAUSE OF ACTION
### *(Sexual Assault/Battery)*

105. Plaintiffs incorporate by reference and re-allege each and every allegation set forth above as though fully set forth herein.

106. To state such a claim, a plaintiff need allege only that there was "bodily contact, that the contact was offensive, and that the defendant intended to make the contact without the plaintiff's consent."

107. Contact is offensive if it is "wrongful under all the circumstances," which certainly is a reasonable inference from Plaintiff's allegations. The only intent required is an intent to "cause a bodily contact that a reasonable person would find offensive."

108.    Any intentional touching effected "for the purpose of satisfying [one's] sexual desires" or made with knowledge "that [plaintiff]'s were physically attacked and had their genitals and body parts groped by the assailants during the attack" would permit a reasonable person to find that, the alleged contact was inappropriate in all of the circumstances, to say nothing of the allegedly forced sex acts or sexual intercourse. Giuffre v. Andrew, 579 F. Supp. 3d 429, 450 (S.D.N.Y. 2022).

109.    Plaintiff is damaged in an amount to be determined at trial.

**WHEREFORE,** Plaintiff demands that judgment be entered against Defendants and seeks the following relief:
   a. Emotional distress damages, including, but not limited to, pain, suffering, stress, humiliation, and mental anguish;
   b. Punitive damages;
   c. Attorney fees, pre-and post-judgment interest, and cost of suit;
   d. Such other relief as the Court may deem just and appropriate under the circumstances.

## AS FOR THE SIXTH CAUSE OF ACTION
### *(Breach of Fiduciary Duty)*

110.    Plaintiffs incorporate by reference and re-allege each and every allegation set forth above as though fully set forth herein.

111.    "The elements of a cause of action to recover damages for breach of fiduciary duty are the existence of a fiduciary relationship, misconduct by the Defendant, and damages directly caused by the Defendant's misconduct. [A] fiduciary owes a duty of undivided and undiluted loyalty to those whose interests the fiduciary is to protect[,] barring not only blatant self-dealing, but also requiring avoidance of situations in which a fiduciary's personal interest possibly conflicts with the interest of those owed a fiduciary duty" (*Greenberg v Wiesel*, 186 AD3d 1336, 1338, 131 N.Y.S.3d 36 [citation and internal quotation marks omitted]). "

112.    A cause of action sounding in breach of fiduciary duty must be pleaded with particularity under CPLR 3016(b)" (*Litvinoff v Wright*, 150 AD3d 714, 715, 54 N.Y.S.3d 22. 106 N. Broadway, LLC v. Lawrence, 2020 NY Slip Op 07151, ¶ 3, 189 A.D.3d 733, 737, 137 N.Y.S.3d 148, 155 (App. Div.)

113.    A [confidential or] fiduciary relationship exists between two persons [or entities] when one of them is under a duty to act for or to give advice for the benefit of the other upon

matters within the scope of the relation" (*AG Capital Funding Partners, L.P. v State St. Bank & Trust Co.*, 11 NY3d 146, 158, 896 N.E.2d 61, 866 N.Y.S.2d 578.

114.      Here, the Plaintiffs placed their trust and confidence in Defendant's AirBnB's declaration that Guillermo Alejandro is a "Superhost," creating a false sense of security in the minds of Ms. Souquette and Mr. Lonsdof, as well as other unsuspecting Airbnb customers.

115.      Subsequent to the attack, Defendant's Airbnb maintained on their website that Guillermo Alejandro is a "super host," even offering the same rental property where this attack took place open for rent.

116.      Thus, as a result of Plaintiff's detrimental reliance, which nearly cost them their lives, and Defendant's subsequent profits over people's pursuits, Plaintiff was harmed in an amount to be determined at trial.

117.      Plaintiff is damaged in an amount to be determined at trial.


**WHEREFORE,** Plaintiff demands that judgment be entered against Defendants and seeks the following relief:
   a. Emotional distress damages, including, but not limited to, pain, suffering, stress, humiliation, and mental anguish;
   b. Punitive damages;
   c. Attorney fees, pre-and post-judgment interest, and cost of suit;
   d. Such other relief as the Court may deem just and appropriate under the circumstances.

## AS FOR THE SEVENTH CAUSE OF ACTION
### *(Loss of Consortium)*

118.      Plaintiffs incorporate by reference and re-allege each and every allegation set forth above as though fully set forth herein.

119.      The elements of a loss of consortium claim include elements such as the loss of support, love, companionship, affection, society, sexual relations, solace, and more (*Millington v. Southeastern Elevator*, 22 NY2d 498, 239 N.E.2d 897, 293 N.Y.S.2d 305).

120.      Mr. Lonsdof is the spouse of Ms. Souquette, the injured Plaintiff.

121.      As a proximate cause and reasonably foreseeable result of the aforesaid injuries to Ms. Souquette, Mr. Lonsdof has been and will be in the future deprived of the support, society, companionship, love, solace, consortium, services, and more because of the injuries to his spouse.

122.      Plaintiff is damaged in an amount to be determined at trial.

**WHEREFORE,** Plaintiff demands that judgment be entered against Defendants and seeks the following relief:

    a.  Emotional distress damages, including, but not limited to, pain, suffering, stress, humiliation, and mental anguish;

    b.  Punitive damages;

    c.  Attorney fees, pre-and post-judgment interest, and cost of suit;

    d.  Such other relief as the Court may deem just and appropriate under the circumstances.

## JURY DEMAND

Plaintiff demands a trial by jury as to all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against all Defendants, jointly and severally, as follows:

a.     For past, present, and future general damages in an amount to be determined at trial;

b.     For past, present, and future special damages, including but not limited to past, present, and future lost earnings, economic damages, and others, in an amount to be determined at trial;

c.     Any appropriate statutory damages;

d.     For costs of suit;

e.     For interest as allowed by law;

f.     For attorney's fees;

g.     The cause of action authorized by any appropriate punitive or exemplary damages against Defendants;

h.     For such other and further relief as the Court may deem proper.

Date: July 19, 2023

Brooklyn, New York

*Tyrone Blackburn, Esq.*

Tyrone A. Blackburn, Esq.

*Attorney for Plaintiffs Ms. Souquette and Mr. Lonsdof*

# PRESERVATION NOTICE

The term "you," "your," or "yours" as used herein shall refer to you (the recipient of this letter), as well as to the respondents, and any individuals responsible for the custody and control of the below information, including, but not limited to, those individuals' administrative assistants, secretaries, agents, employees, information technology personnel and third-party vendors.

You are directed from this point forward to prevent any "spoliation," defined as altering, changing, updating, destroying (even if periodically), editing, or deleting any of the information set forth hereafter.

**If you cause any such alteration, destruction, or change, direct it or allow it to occur, you may be charged with discovery rule violations for which sanctions may be imposed. Further, your failure to abide by this request could result in severe penalties against you and form the basis of legal claims for spoliation**.

Electronically Stored Information:

In terms of electronically stored information, you are directed to prevent any destructive, alternative or other change to any web pages, virtual profiles or identical (including, but not limited to, Facebook, Instagram, Pinterest, Twitter, Tumblr, LinkedIn, Snapchat, Google Plus+, Flickr, Vine, About.me, ask.fm etc., or any other social media-based web profile or networking site account), emails, voice messages, text messages, instant messages or messaging systems, recordings, digital recordings, media images and videos, temporary memory, memory sticks, portable memory devices, laptops or computers, CDs, DVDs, USB devices, databases, computer activity logs, internet browsing history (including cookies), network access and server activity logs, word processing files and file fragments, backup and archival files, imaging and facsimile files, electronic calendar and scheduling program files and file fragments as well as any other contact and relationship management data (e.g., Outlook), electronic spreadsheet files and file fragments, pertaining in any way to this controversy of the parties or any potential witnesses. This includes a request that such information not be modified, altered, or deleted due to data compression or disk fragmentation (or other optimization procedures), which processes you are hereby directed to suspend until that data can be preserved, copied, and produced.

You are directed not to modify, alter, or delete or allow modifications, alterations, or deletions to be made to-any such electronically stored information. You are further directed to preserve all, and not to destroy any, passwords, decryption productions (including, if necessary, the software to decrypt the files), network access codes, manuals, tutorials, written instructions, decompression or reconstruction software, and any other information and things necessary to access, view and (if necessary) reconstruct the electronic data we will request through discovery.

Paper Information:

In terms of the paper information, you are directed to preserve any and all emails, videos, texts, memos, reports, documents, notes, correspondence, photographs, investigative information, or other documents which pertain in any way to the controversy, parties, or witnesses in this matter.

Through discovery, we expect to obtain from you a number of documents and other data, including text messages, emails, photographs, and other information stored on computers, electronic devices, and telephones.

Although we may bring a motion with a court for order-preserving documents and other data from destruction or alteration, your obligation to preserve documents and other data for discovery in this case arises independently from any order on such motion.

Electronic documents and the storage media, including but not limited to telephones on which they reside, contain relevant, discoverable information beyond what may be found in printed documents. Therefore, even where a paper copy exists, we are likely to seek all documents in their original, electronic form, along with metadata or information about those documents contained in the media. We will seek paper printouts of only those documents that contain unique information created after they were printed (e.g., paper documents containing handwriting, signatures, marginalia, drawings, annotations, highlighting, and redactions) and any paper documents for which no corresponding electronic files exist.

The laws and rules prohibiting the destruction of evidence apply to electronically stored information in the same manner that they apply to other evidence. Due to its format, electronic information is easily deleted, modified, or corrupted. Accordingly, the demand is made that you take every reasonable step to preserve this information until the final resolution of this matter. This may include, but would not be limited to, an obligation to discontinue all data destruction and backup tape recycling policies.

Concerning electronic data created after the date of delivery of this letter, relevant evidence should not be destroyed. You must take the steps necessary to avoid the destruction of such evidence.


Date: July 19, 2023
Brooklyn, New York

*Tyrone Blackburn, Esq.*
Tyrone A. Blackburn, Esq.
*Attorney for Plaintiffs Ms. Souquette and Mr. Lonsdof*

## DEMAND FOR INSURANCE COVERAGE

Defendants are demanded to provide a complete copy of their applicable insurance policies and declaration sheets demonstrating coverage within thirty (30) days of service of this Complaint.

Date: July 19, 2023
Brooklyn, New York

*Tyrone Blackburn, Esq.*

Tyrone A. Blackburn, Esq.

*Attorney for Plaintiffs Ms. Souquette and Mr. Lonsdof*